UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARKIS SULTANIAN,<br><br>          Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>          Defendant. | Case No. CV 08-1564-JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On March 11, 2008, Sarkis Sultanian ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of his application for Disability Insurance Benefits and Supplemental Security Income benefits. On March 14, 2008, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On March 31, 2008, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on September 5, 2008, defendant filed an Answer to the Complaint. On November 13, 2008, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

**BACKGROUND**

On March 10, 2004, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income benefits alleging a disability onset date of February 15, 2004. (Administrative Record ["AR"] at 56-58, 184-87). The Commissioner denied plaintiff's applications for benefits both initially and upon reconsideration. (AR at 37, 38, 39-43, 46-51). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 52-53).

On January 21, 2005, the ALJ conducted a hearing in West Los Angeles, California. (See AR at 188-208). Plaintiff appeared at the hearing with counsel and testified with the assistance of an Armenian language interpreter. (AR at 193-202). Sandra Schneider, a vocational expert, also testified at the hearing. (AR at 203-07). On February 14, 2005, the ALJ issued his decision denying benefits to plaintiff. (AR at 17-24). The ALJ determined that plaintiff had the following severe impairments: hypertension well-controlled and diabetes mellitus. (AR at 23). The ALJ determined that plaintiff's conditions did not meet or equal any of the impairments listed in Appendix 1 of the regulations. (Id.). The ALJ discredited plaintiff's subjective complaints of severe functional limitations and concluded that plaintiff retained the residual functional capacity to perform "at least light exertional level work."[1] (AR at 21). The ALJ determined that plaintiff's past relevant work as a jeweler, as generally performed, was not precluded by plaintiff's residual functional capacity. (AR at 23). Thus, the ALJ concluded that plaintiff was not disabled at any time through the date of the decision. (Id.). The Appeals Council denied plaintiff's timely request for review of the ALJ's decision. (AR at 4-6).

Thereafter, plaintiff appealed to the United States District Court (Case No. CV 05-8638-DOC (JTL)). On June 13, 2006, the Court approved the parties' Stipulation to Voluntarily Remand Pursuant to Sentence Four of Title 42, United States Code, Section 405(g) and remanded the case for further proceedings. Among other things, the Appeals Council

---

[1] Specifically, the ALJ determined that plaintiff could perform work that required lifting up to 20 pounds, sitting for six hours in an eight-hour workday, standing for six hours in an eight-hour workday, bending, stooping and using the hands for both gross and fine manipulation. (AR at 21).

requested that, on remand, the ALJ consider the severity of plaintiff's visual impairment and obtain a consultative ophthalmologic examination. (AR at 240-44). Thereafter, the Appeals Council vacated the final decision of the Commissioner and remanded the case to the ALJ.[2] The Appeals Council also ordered the ALJ to make a number of specific findings regarding the nature and severity of plaintiff's visual impairment. (AR at 247-49).

On March 27, 2007, the ALJ held a hearing in West Los Angeles, California. (AR at 436-47). Plaintiff appeared at the hearing with counsel and testified with the assistance of an Armenian language interpreter. (AR at 439-41). A vocational expert, June Hagen, Ph.D., also appeared at the hearing and testified. (AR at 443-46). On July 25, 2007, the ALJ issued his second decision denying benefits to plaintiff. (AR at 227-35). The ALJ determined that plaintiff had the following severe impairments: hypertension well-controlled and diabetes mellitus. (AR at 229). The ALJ determined that plaintiff's conditions did not meet or equal any of the impairments listed in Appendix 1 of the regulations. (Id.). The ALJ concluded that plaintiff retained the residual functional capacity to perform at least light exceptional work, lift up to 20 pounds, sit for six hours in an eight-hour workday, and stand/walk for six hours in an eight-hour workday. (AR at 233). The ALJ found that the medical record did not contain any evidence that plaintiff had a visual limitation that would limit his ability to perform his past relevant work as generally performed. (AR at 234). Thus, the ALJ determined that plaintiff had the residual functional capacity to perform his past relevant work as a jeweler, as generally performed. (Id.). The ALJ concluded that plaintiff was not disabled at any time through the date of the decision. (Id.). The Appeals Council denied plaintiff's timely request for review of the ALJ's decision. (AR at 209-11).

Thereafter, plaintiff appealed to the United States District Court.

///

///

---

[2] Plaintiff filed a second application for Disability Insurance Benefits and Supplemental Security Benefits on April 22, 2005. (AR at 283-87). In its Remand Order, the Appeals Council consolidated plaintiff's second applications for benefits with plaintiff's original applications. (AR at 248-49; see also AR at 266).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1. The ALJ failed to comply with the Appeals Council's Remand Order instructing the ALJ to make specific findings regarding the nature and severity of plaintiff's visual impairment.

2. The ALJ failed to present a complete hypothetical to the vocational expert.

3. The ALJ failed to provide specific and legitimate reasons for discrediting plaintiff's subjective complaints.

**STANDARD OF REVIEW**

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

A. <u>The Sequential Evaluation</u>

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner

4

has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 141 (1987). Second, the ALJ must determine whether the claimant has a severe impairment. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantially gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at ALJ times, the burden is on the claimant to establish his or her entitlement to disability insurance benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.     The Severity of Plaintiff's Visual Impairment**

Plaintiff argues that the ALJ failed to comply with the Appeals Council's Remand Order by failing to discuss the weight given to the findings of Jagvinder Singh, M.D., a consultative examiner, and the medical records from the eye clinic at the USC Medical Center. (Joint Stipulation at 4). Plaintiff argues that he suffers from a loss of visual acuity and the ALJ failed to fully develop the record with regard to the impact of plaintiff's loss of visual acuity on his ability to perform basic work activities. (Joint Stipulation at 8). Defendant, on the other hand,

argues that plaintiff failed to meet his burden to establish that he suffered from a severe visual impairment. Defendant alleges that the medical evidence in the record shows that the effects of plaintiff's visual impairment could be eliminated with the use of corrective lenses and that his visual impairment was, therefore, not severe. (Joint Stipulation at 5-7).

In the Appeals Council's Remand Order vacating the February 14, 2005 ALJ decision, the Appeals Council ordered the ALJ to (1) evaluate the examining source opinion rendered by Dr. Jagvinder Singh, M.D., who opined that plaintiff had developed possible retinopathy; (2) evaluate the treating source opinion from the eye clinic at the USC Medical Center, which reported that plaintiff has a spot in the center of his right eye and diagnosed plaintiff with central vision loss in the right eye; and (3) clarify the record regarding the nature and severity of plaintiff's visual impairment. (AR at 247-48). The Appeals Council also instructed the ALJ to obtain additional medical evidence from the treating sources regarding what plaintiff could still do despite any visual impairments; give further consideration to treating and examining source opinions regarding any visual impairment; and, where necessary, request additional information or clarification regarding what plaintiff could still do despite his impairments. (AR at 248).

Following the Appeals Council's Remand Order, plaintiff underwent a consultative ophthalmological examination by David Paibel, M.D. (AR at 432-34). Dr. Paibel found that with glasses, plaintiff's best possible correction is 20/50 in the right eye and 20/40 in the left eye. (AR at 433). Thereafter, on March 27, 2007, the ALJ held a supplemental hearing. (AR at 436-47). At the hearing, plaintiff testified that his vision had become worse in the past two years and that he could not make his eyes focus for more than five to ten minutes at a time. (AR at 439-40). Plaintiff's attorney brought Dr. Paibel's findings to the ALJ's attention and noted that they showed loss of visual acuity. (AR at 447; see AR at 432-35).

On July 25, 2007, the ALJ issued a decision denying benefits to plaintiff. (AR at 227-35). The ALJ determined that "the record shows that examining physicians concur that [plaintiff] lacks a severe medically determinable visual impairment or combination of impairments[,]":

///

In April 2004, based on testing of visual acuity with a Snellen

>chart, consultative examiner Dr. Javinder Singh did not
>diagnose [plaintiff] with a visual impairment and reported that
>[plaintiff] without glasses has vision of 20/200 with both eyes,
>vision of 20/100 with the right eye, and vision of 20/100 with
>the left eye; [plaintiff] with glasses has vision of 20/30 with both
>eyes, vision of 20/40 with the right eye, and vision of 20/30 with
>the left eye; and [plaintiff] has right eye vision of 20/70 with
>pinhole testing and left eye vision of 20/50 with pinhole testing.
>[AR at 145, 148]. In June 2005, consultative examiner Dr.
>Jagvinder Singh did not diagnose [plaintiff] with any visual
>impairment or report that [plaintiff] lacks any visual limitations.
>[AR at 337, 340]. In June 2005, a medical consultant reported
>that [plaintiff] lacks any visual limitations. [AR at 353]. In
>November 2005, a medical consultant reported that [plaintiff]
>lacks any visual limitations. [AR at 379]. In February 2007,
>consultative examiner Dr. David Paibel, ophthalmologist,
>reported that [plaintiff] lacks any visual limitations and reported
>that [plaintiff] with glasses has vision of 20/50. [AR at 430,
>433].

(AR at 230). The ALJ then concluded that plaintiff did not have a severe medically determinable visual impairment or combination of impairments and lacks any significant visual limitations. (AR at 234). The ALJ discredited plaintiff's assertion that he has significant debilitating visual limitations and found plaintiff's alleged limitations inconsistent with his testimony regarding his daily activities. (AR at 230, 232-33). Accordingly, the ALJ found that the "medical record does not contain any evidence that [plaintiff] has visual limitations which would limit his ability to perform his past relevant work as generally performed." (AR at 234).

///

In making his conclusions regarding the severity of plaintiff's visual impairments and

limitations, the ALJ failed to comply with the Appeals Council's Remand Order. The Appeal's Council remanded the case, in part, to order the ALJ to address Dr. Singh's opinion that plaintiff had possibly developed retinopathy. (AR at 247-48). The opinion of a consultative examiner, such as Dr. Singh, may be relied upon by the ALJ in order to determine a claimant's residual functional capacity if the opinion is supported by clinical tests and observations upon examination. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion may constitute substantial evidence when based on independent clinical findings); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). While the ALJ discussed Dr. Singh's findings regarding plaintiff's visual acuity, the ALJ did not address Dr. Singh's opinion regarding the fact that plaintiff might have retinopathy. Instead, the ALJ noted that Dr. Singh did not diagnose plaintiff with a visual impairment and concluded that plaintiff "lacks a severe medically determinable visual impairment or combination of impairments and lacks any significant visual limitations." (AR at 230, 234). Defendant argues that Dr. Singh did not diagnose plaintiff with any potential vision impairment when he re-examined plaintiff in June 2005 and, thus, there was no need to address the possible retinopathy. However, the Appeals Council remanded the case for the ALJ to more specifically evaluate the treating source opinions regarding the nature and severity of plaintiff's visual impairment. Even at his June 2005 examination plaintiff suffered from problems with visual acuity. (AR at 337). Dr. Paibel also performed an opthalmological examination on plaintiff on February 16, 2007, and found abnormalities in plaintiff's visual acuity as well a possibility of early cataracts. (AR at 433). The ALJ did not address these abnormalities in his decision. Furthermore, the ALJ did not address the records from USC Medical Center, which reported that plaintiff had a spot in the center of his right eye and diagnosed him with central vision loss in the right eye. (AR at 247-48; see AR at 132-40). The opinion of a treating physician is entitled to deference and the ALJ may not reject the treating physician's opinion, even if there is substantial evidence in the record contradicting the opinion of the treating physician, without providing specific and legitimate reasons for doing so that are supported by substantial evidence in the record. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). See also Orn v. Astrue, 495 F.3d 625, 631-32 (9th

Cir. 2007) (even if a treating physician's opinion is no longer entitled to controlling weight because there is substantial evidence in the record contradicting the opinion, the opinion is still entitled to deference and must be discussed and weighed by the ALJ).

Here, the ALJ did not provide sufficient reasons for rejecting the treating physicians' findings. The Court cannot be left to speculate as to what would have been the ALJ's specific reasons for rejecting the treating physician's testimony. See Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." ). Thus, the ALJ's conclusory determination that plaintiff "lacks a severe medically determinable visual impairment or combination of impairments" did not sufficiently address the issues raised in the Remand Order.

**C.    Remand is Required to Remedy Defects in the ALJ's Decision**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

Here, in light of the ALJ's failure to fully comply with the Appeals Council's Remand Order, the Court finds remand appropriate. On remand, the ALJ must fully address the opinions rendered by Dr. Singh, the records from the eye clinic at the USC Medical Center, and Dr. Paibel's findings. The ALJ should make specific findings regarding plaintiff's visual impairment and clearly indicate the weight given to the medical opinions in the record.[3]

---

[3] In the Joint Stipulation, plaintiff also contends that the ALJ erred in failing to present the vocational expert with a complete hypothetical and failing to provide adequate reasons for discrediting plaintiff's subjective complaints. As explained above, however, the ALJ's error in failing to comply with the Appeals Council's Remand Order constitutes sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments again. In any event, the ALJ should consider ALJ the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: December 4, 2008

/s/Jennifer T. Lum
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE